We have Judge Rovner with us on video. Morning, Judge Rovner. Good morning, Judge Bauer. Morning, dear. We're very friendly in this court. The first case this morning is A. H. v. Illinois High School Athletic Association. Ms. Rua. Good morning, Your Honor. Davie Rau for Plaintiff-Appellant A. H. May it please the Court. The District Court's order must be reversed. When Congress passed the ADA, it required that all reasonable accommodations should be granted, and it did so to integrate individuals with disabilities into the mainstream of American life. Now, the reasonableness of an accommodation is generally an intensely fact-specific inquiry, which is why summary judgment is rarely appropriate. I'd like to outline briefly the key undisputed facts. First, the accommodations that A. H. requested were a separate division and time standards to be used for paraambulatory athletes at the sectional and state meets, and he requested a separate division for the state road race. I. H. S. A. has conceded repeatedly that it would pose no administrative or financial burdens to grant this accommodation request. A. H. is requesting only the same treatment that I. H. S. A. affords to able-bodied boys and girls from different types of schools, to wheelchair athletes, and to swimmers with physical disabilities. Indeed, at least eight other states already have paraambulatory divisions in their state athletic competitions and have faced no meaningful burdens in doing so. How many do you, are there paraambulatory athletes going to be involved in this if you set up? First, the reasonableness of an accommodation is granted on an individual basis, so it's not, strictly speaking, part of the inquiry how many students would participate. A. H. is requesting the accommodation on his own behalf. However, I do think it's important because granting the accommodation would not just benefit A. H., but would benefit potentially a number of other students. So, facts on this. Judge Rovner has a question. Oh, I'm sorry, Judge Rovner? Out of curiosity, do you have a sense whether A. H. is in the top 10% of paraambulatory high school runners in the state? I understand that he's among the top paraambulatory athletes in this country, but do you have any idea about where he would be in the state of Illinois? Yes. As you mentioned, the record is that he is a top athlete in the country, and the letter from the Great Lakes Adaptive Sports Association, which is at SA 155, explains that A. H. is probably the best high school athlete of his class in the state of Illinois. Now, getting back to the question of how many physically disabled students this accommodation would potentially benefit, the IHSA website says that for wheelchair track, which we think is a good sort of comparator, there have, in this past year, there were six boys and nine girls who participated. And in physically disabled swimming, there were 10 boys and three girls. Now, obviously, these are not the same people, but it sort of gives you a sense of the numbers across the state. Other data points... Do both the boys and girls participate in the same races? They don't. So, both for track, for the wheelchair division, and for swimming, they're divided by gender, the same way that able-bodied students are divided by gender. So, some additional data points on numbers. The Great Lakes Adaptive Sports Association letter, again, at SA 156, says that Illinois has one of the highest concentration of athletes, paraambulatory athletes, in the whole country. And a 50-state survey shows that, on average, five students are participating in other states. Finally, we know that at least one other student has already been denied an accommodation request. There's an article in the Chicago Tribune, which is in the record, at SA 112, which references the story of a girl with physical disabilities, similar to AAHs, who's been denied an accommodation request. So, while we don't know the actual numbers, we think that it's sort of a, if you build it, they will come situation. Right now, likely, the number of students who are with paraambulatory athletes is depressed by virtue of the fact that they're required, as AAHs, to participate against their able-bodied peers. So, in our expert report, our expert opines that IHSA saw an increase in participation when they created both the swimming division and the wheelchair track division, and we think it's like, it is reasonable to think that even though AAH is the only boy who has currently requested such an accommodation, there are a number of students who would participate if it was created. Does your individual inquiry argument imply that the IHSA could say, we can accommodate athletes with international Paralympic classifications of T35, but not T38? So, the IHSA, there are a number of ways in which the IHSA could implement a paraambulatory division, and they have some discretion in doing so. So, a number of states, eight states already have such divisions, and they've structured their competitions in similar, although different ways. So, one option that IHSA could implement is to say that we have one division for paraambulatory athletes, and we have one time standard for all such athletes who don't use wheelchairs. So, this is the way that Louisiana, Washington, Colorado, and California have all implemented their divisions, and the actual time standards... And to how many pieces would the IHSA be able to split hairs? Can it say that they only need to accommodate someone with an IPC of T36 who has cerebral palsy, or once it opens the door, must it start accommodating every small subdivision of abilities? So, to be clear, what we're asking for is one division that would apply to all paraambulatory athletes, and a time standard that is reasonable for that umbrella grouping of athletes. And IHSA has already implemented separate time standards that are appropriate for subgroups of individuals, for able-bodied girls and boys from different classes of schools, for wheelchair athletes, and for swimming for students with disabilities. So, we think that they have ample experience in implementing separate divisions with time standards for a group of individuals where there is possibly a range of abilities within that group. And we don't think that IHSA would be required to split hairs down to the level of IPC classification in the division. We're just requesting one division, and in terms of what the reasonable time standard is, there are a number of different states that have different standards that IHSA has experience giving different time standards to different sets of students, and IHSA has conceded repeatedly that because it has this experience, and because of the nature of track, which is specific, it's not a team sport in the way that creating a separate wheelchair basketball division would impose burdens. IHSA has said specifically it would really be not burdensome for them to implement this new division, they just don't want to. Now, just sort of bottom line, we're talking about a classification. In other words, all he asks, I take it, is to compete with his peers, those that are similarly situated for a shot at making it to state. Is that it in a nutshell? Yes. Judge Ropner, that is exactly it in a nutshell. The AH is requesting to be treated the same way that IHSA already treats essentially all other groups of students, which is allowing groups of students to participate with people of their peer group with time standards that are reasonable for that group of students to allow them to participate in state. By peer group, you mean age? So by peer group, what I mean is IHSA currently has eight different classifications for track. I was asking specifically what you meant by peer group. By peer group, here it's shorthand for students who have similar characteristics. Does that include disabilities? No, no, yes or no? Yes. We think that AAH's peer group is para-ambulatory athletes. In other words, athletes with physical disabilities but who don't use wheelchairs because there's already a separate wheelchair division. Well, it would cover many different neurologic diseases, I take it. That's right. That's the model that a number of other states use. They say we have, putting aside what divisions we have for able-bodied athletes, we have a separate division for runners like AAH. And runners who can run don't use a wheelchair but who have physical disabilities that means that their bodies work in ways that are different from their already implemented such divisions. And there's no evidence in the record that there are any floodgates problems or problems with other folks coming out and requesting additional divisions outside of that para-ambulatory umbrella group, which is what we're asking for here. I think one of the considerations, however, is if it's a very small number. So, in terms of the number of students who might actually benefit, a couple of points. So, one is you might think that the number of students who participate in wheelchair track would be low or swimmers with physical disabilities would be low, but in fact those numbers, as I mentioned before, are around ten students of each gender participating in those separate divisions. Those separate divisions, which IHSA has already deemed to be appropriate and not burdensome and effectively a reasonable accommodation. So, we don't know, the record is not fully developed on the number of students who could- When you say ten, ten in what, per school or per- The role here is that they implement the sectional meets and the state meets. We don't fully have, what happens at each school level is really run by the individual school, but we know that in 2017 there were six boys and nine girls who participated in wheelchair track and made it to sectionals. I mean, to make it to sectionals and state. So, but the individual track meets, not sectionals, but the individual track meets, maybe one or more, one to three, four, five schools, perhaps, and a track meets scheduled by, they're not covered by these programs. They're covered by IHSA, which sets rules for the individual schools, but IHSA itself does not run those meets at that level. I guess a couple, just one additional point before I sit down and reserve the remainder of my time, which is that it is true that in any individual meet, there may be only one student in a disability class participating in this new division, but the way that, the remedy that we've asked for is that in order to advance to the state finals, that student would be required to meet the time standard. It's not the case, as in able-bodied, the able-bodied division, if you're top one or top two, you get through from sectionals to state, and that's not what we're requesting here. We're saying that you need to meet the time standard, and that is acknowledging that, in fact, there's a smaller group of students that's going to be participating in these races. Thank you. Thank you. Sorry. Good morning, my name is Craig Unrath, I represent the- Keep going, there you go. Got it. I represent the Illinois High School Association. By all accounts, Plaintiff is an outstanding individual, a valued member of his track team, an inspiration to both disabled and able-bodied athletes alike. He embodies everything that the IHSA hopes to achieve through its athletic programs and events. If you use a name instead of the initials, we can all follow it. How about if I just call it the association? Okay. That'd be fine. Great. The issue before this court is not whether the association should create a separate division and separate time standards for paraambulatory athletes. The question before this court is whether it must do so and must do so now. That's the issue before this court. Nothing in the Americans with Disability Act requires the association to make this accommodation. And why did you make the accommodations for those in wheelchairs, in swimming meets, in wheelchair events? Where is the harm here? I don't get it. Your Honor, we did not create those divisions because we were required to do so. We were not required to do so under the ADA. As a matter of fact, the high school association regularly communicates with the Department of Justice and the Office of Civil Rights, and they have uniformly and consistently advised the IHSA that they need not create new activities or programs specifically for disabled student athletes. They'd use their own discretion. Now it's important, there's one key fact here, is that the IHSA is governed by two things. One is mission statement, and the second is by its member schools. When its member schools come together and say, we want this accommodation, we want wheelchair competition, we want paraambulatory swimming events with separate time standards, they're going to get it. But that hasn't happened in this case. No high school in Illinois, no association member has ever requested a separate division for paraambulatory athletes, and that includes Evanston Township High School. Right now, we have just one individual, the plaintiff in this case, who has requested this division. Well, look, part of the reason that there are so few competitors is because of the longstanding policy to not have separate standards for paraambulatory students. These students don't get involved in running because they have no chance of advancing. Who does an act that is meaningless? If AH were not physically disabled, he would have statistically a 10% chance of making the state series. Because of his disabilities, he has no chance, none whatsoever. Does that strike you at all as being discriminatory? No, it does not, Your Honor. And first off, first of all, I take umbrage when you suggest that a disabled athlete obtains no benefit from participation in his own track and field team. Now, I strongly disagree with that. You can take all the umbrage you want, sir. I never said anything of the sort. I apologize, Your Honor, I misunderstood. There is a tremendous benefit for a disabled student athlete to participate on a high school athletic team. They learn life lessons. Of course they do, but they never, ever, ever have a chance to win. I agree. It's impossible. It is impossible. Your Honor, and it comes down to this, is the IHSA required to make this new division under the ADA or should it? And they are two completely separate questions. Well, should it? Should it? Perhaps. And it may very well do so. In common decency and under the ADA, should it? If somehow you manage to do it for people in wheelchairs. As I said earlier, the IHSA responds to its membership. Its membership asked for wheelchair accommodation divisions and they obtained it. In this particular case, no member high school has ever requested it. So have Everett's in the high school requested it? No. No, if they did. If they did, that would be one. We would certainly want to look at other high school members to find out if they support this. Otherwise, they'd be running against themselves only. And that's the problem we have in this case. The goal of the IHSA is to integrate disabled and able-bodied athletes to work together on the same team. What purpose is served by having a separate division with one participant, particularly in a track race? What purpose is served? There will be plenty of others once you open it up. Just like everything else in life. Just like everything else in life. That can be true. That can be true, but that's speculative. Now there have been numbers of, a number of... Your view is every bit as speculative, if not more so. I mean, how does it harm any other athlete to have an extra... You've already admitted that it wouldn't be a matter of cost. It... I'm... You know, can I tell you something? My heart goes out to you having to argue this view of life. I understand that you have to. This is your client. Your Honor, it's not just my client. It's Supreme Court precedent. Whether this should be done is an ethical question that I'm certain that the board members of the IHSA have strongly considered. But the issue before this court is not whether they should or shouldn't. It's whether they are required to do so under the ADA. Is there evidence in the record that there was a large increase in paramilitary athletes in swimming after the IHSA changed the standards to allow for paramilitary time qualifications? It's right there in the record. And this comes down to the argument that if you build it, they will come. And sometimes that is true, and sometimes it is not. Let me ask you what the experience has been in those states which have permitted paramilitary... Some of them have been met with success. Others not. Others, they've had no participants. Sometimes it works and sometimes it doesn't. There is nothing, no guarantee that creating such a division now and being required to do so now will call in more paramilitary athletes. I would also like to point out one of the initial questions that Judge Rovner raised, which is we're dealing with a single division here. She said, well, what about a T35? Would we have a separate division for T38? And opposing counsel said, no, we ask for one single division. Now keep in mind, plaintiff's counsel is asking that her client have a meaningful opportunity to compete. A T38 competing against T35s, is that a meaningful opportunity to compete? In fact, when you look at it, 90% of all able-bodied athletes have no chance, absolutely no chance of making it to the state finals. Do they have a meaningful opportunity to compete? Your Honor, what we're dealing with here is discretion. Is the association allowed to make up its own mind based on the needs of its membership, or is it required to create these accommodations by law? Let me go back, and you can answer the question as well, that I asked your opposing counsel. On the track meets that occur throughout the year, not sectionals, but just regular track meets that are held, what part does your association play other than rulemaking in those events? Could they have, for example, a paramilitary category if they wanted to in those separate? Absolutely, absolutely. So we're only dealing with the sectional, which is on your way to, I assume, a state championship at some point, is that right? Yes, the high schools can elect two individuals to the sectionals. But to advance to the finals, they have to finish either in first or second place, I believe, or meet a specific qualifying time. But as far as run-of-the-mill weekly or twice-a-week track meets that high schools would have, you don't say yes or no with regard to paramilitary participants in that. They could have their own separate division if they wanted to. I'm not sure I understand your question, Your Honor. Well, you control the sectionals, and you set up the divisions there. And the state finals, yes. And the state finals. But I'm talking about just the track meet that's set up between the schools. Do you set up the divisions in that? As I understand it, high schools would be free to have their own separate divisions. That was my question. So the high school itself, if they chose, could do it. At that level, yes. Not the sectional, I understand. Not the sectional or not the . . . And Your Honor, I actually would caution my answer there. I'm not 100 percent certain about my answer to that question. So I would defer that to more experienced people. But it does make some difference because if the school wanted it and they weren't prohibited from doing it, the school itself, along with their opponent in a particular track meet, could set up that. I see no reason why they couldn't, and I see no reason why they couldn't petition the IHSA to create a division. But they haven't done so, Your Honor. I think you're inviting them to, though, Mr. Unrath. I certainly . . . I think you're inviting them to. I mean, here's the way I'm viewing it. A paramilitary runner competing in his own race presents neither a safety nor competitive risk to any other runner. In other words, what difference will it make? The top 10 percent elite runner for the traditional races will still be in the top 10 percent and keep their place in the meet. They will not be affected in any manner by a separate ambulatory race. What is the harm to the runners? What difference does it make, if it is a substantial modification to the program, if the program for the elite, non-disabled runners stays exactly the same? I'm sure all of these arguments were made with the wheelchairs, with the swimmers, in all the other states that are around. The question is, does the IHSA have the discretion to determine which events will be allowed and which will not, or are they required in every case? Now, you raised a perfect example when you mentioned the difference between a T-35 and a T-38. They've asked for a separate division, limited to a single division. Is that going to satisfy everyone? Is everyone going to have a meaningful chance to compete, or are we going to get further requests? Why don't we try and see? Why this parade of horribles? I don't see any. Things have worked out in Oregon. Things have worked out in California. Things have worked out in Washington. Things have worked out in Alabama. Things have worked out in Louisiana. And there are a few other states that I can't remember right now. And each of those decisions were voluntary decisions by the high school associations themselves. They were not required to open up those divisions. And this comes down to the essential point I'm trying to make. There's a difference between saying that we should create this division and we must. There is nothing under the ADA that requires us to do so. Illinois is living in the dark ages. Your Honor, I see that my time is up. You're saved by the bell. Pardon me? You're saved by the bell. I respectfully request that the court affirm the district court's decision. Thank you. Thank you, counsel. How much time? You have two minutes. Thank you, Your Honor. So just briefly, I'd like to emphasize that this case comes before your honors on the grant of summary judgment, where all of the facts need to be construed in the non-moving party's favor. That is an AHS. Do you find something in the act that requires them to take the action you're seeking? So the ADA requires broadly that all reasonable accommodations must be granted. The Supreme Court's decision in Martin is the only Supreme Court decision we have on the reasonableness of an accommodation in the athletics context, and I think it's very instructive. Martin says that an accommodation might not be reasonable if one of two things is true. First, it gives any participant a leg up in the competition over any other participant. And as Judge Rovner has emphasized, that's not at play here. AH is requesting to be judged by separate standards on a separate division, and IHSA does not argue otherwise. Second. That's permissive. I want to know, is there a mandatory portion of the act that requires them to take the action you want? So the ADA requires that reasonable accommodations be granted. And the reasonableness of an accommodation is a fact-intensive question. We think that this accommodation is eminently reasonable. Where they've conceded, there is no burden. And where they have effectively shut out AH from the same treatment that they give every other track participant, which is being judged against his peers in a separate division with separate time standards. Well, the district court, though, indicated in its judgment that IHSA is not required by statute or the Constitution to lower the qualifying standards. In other words, to set up a separate division. Do you agree with that? I don't agree with that. The district court said that as a matter of law, the accommodation we were requesting was unreasonable because the district court seemed to be construing what we're asking for as lowering the standards that apply evenly across the board. But that's not the case here. IHSA has different standards, eight of them currently, across the board based on your classification. And we're asking for standards for our client, which are similar to the standards they set up for other students. Well, let me get back to the question I asked. Do you agree that the association is not required by statute or the Constitution to set up a division? I don't agree. What the ADA requires is based on whether the accommodation is reasonable on the facts. And here, there is no burden. There is no chance that AH gains any competitive benefit over anyone else. And the accommodation would not modify a fundamental aspect of the sport, where IHSA already acknowledges that in track, you are judged on your ability to run based on your peer group. I'll put it another way, then. The Constitution and statutes require them to set up that division. The Constitution is not an issue here. We're not appealing from the grant of. Constitution is always an issue. As a matter of what the ADA requires, we think on the specific facts in this case, yes, IHSA was required to grant our accommodation request because it wouldn't be burdensome for them, it wouldn't give AH any competitive leg up, and because it is essentially asking for treatment like they have already given to essentially everyone else who participates in track. What we have is what your opposing counsel argued. He says that the judge determined that it wasn't required by statute, and you're saying, I guess, that it is required by statute. Yes, so to be clear, the district court granted summary judgment as a matter of law, and we think that was fundamentally incorrect. And it was, in fact, required to at least we should have been able to go to trial on the question of whether the accommodation was reasonable. Neither side says it's necessarily a bad idea. They just don't want to be forced to do it, and you say they should be forced because it's required by the statute. Because the ADA, when Congress passed the ADA, they said. The answer to the question was yes or no. Yes. Because when Congress passed the ADA, they required that in order to integrate people with disabilities into society, all reasonable accommodations must be granted. We ask that the district court's order be reversed. Thank you. Thanks to both counsel. The case will be taken under advisement.